# 22-3211 (L)
## 23-6378 (con), 23-6401 (con)

*To Be Argued By*
*Lawrence Gerzog*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
　　　　　　　　　　　　　　　　Appellee,

-against-

**BUSHAWN SHELTON, AKA Shelz, ARTHUR CODNER, AKA Feddi, AKA Fetty, AKA Feddi Bossgod, AKA Fetty Boss, AKA Scary, KALIK MCFARLANE, ALFRED LOPEZ, AKA Aloe, BRANDEN PETERSON, AKA B, AKA Mur B, JULIAN SNIPE, AKA Biz, AKA Bizzzy, JASON CUMMINGS, AKA The Hat, AKA Stacks,**
　　　　　　　　　　　　　　　　Defendants,

**HERMAN BLANCO, AKA Taliban, ANTHONY ZOTTOLA, SR., AKA Anthony Zottola, HIMEN ROSS, AKA Ace,**
　　　　　　　　　　　　　　　　Defendants - Appellants.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

**REPLY BRIEF FOR HIMEN ROSS**

　　　　　　　　　　　Lawrence D. Gerzog
　　　　　　　　　　　The Fast Law Firm
　　　　　　　　　　　521 Fifth Avenue, 17th Floor
　　　　　　　　　　　New York, New York 10175
　　　　　　　　　　　(212) 486-3003
　　　　　　　　　　　*Attorney for Appellant*
　　　　　　　　　　　*Himen Ross*

*Page*

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      THE GOVERNMENT'S BRIEF FAILS TO OVERCOME THE PREJUDICIAL ERRORS IDENTIFIED IN OUR PRINCIPAL BRIEF AND AS A RESULT, THE JUDGMENT OF THE DISTRICT COURT SHOULD NOT BE AFFIRMED . . . . . . . . . . . . 2

      A.    The Government's Prejudicial Employment of the Word "Gang" and Similar Language . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Zotolla's Trial Defense Exacerbated the Prejudice . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**Cases**

*United States v. Downing*, 297 F.3d 52 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 5, 9

*United States v. Massino*, 546 F.3d 123 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Pipola,* 83 F.3d 556 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 7

**Rules**

Fed.R.Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Fed.R.Evid. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8-10

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

Docket Nos. 22-3211 (L), 23-6378 (con), 23-6401 (con)

———————————————

UNITED STATES OF AMERICA,
Appellee,

-against-

BUSHAWN SHELTON, AKA Shelz, ARTHUR CODNER, AKA Feddi, AKA Fetty, AKA Feddi Bossgod, AKA Fetty Boss, AKA Scary, KALIK MCFARLANE, ALFRED LOPEZ, AKA Aloe, BRANDEN PETERSON, AKA B, AKA Mur B, JULIAN SNIPE, AKA Biz, AKA Bizzzy, JASON CUMMINGS, AKA The Hat, AKA Stacks,
Defendants,

HERMAN BLANCO, AKA Taliban, ANTHONY ZOTTOLA, SR., AKA Anthony Zottola, HIMEN ROSS, AKA Ace,
Defendants - Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

REPLY BRIEF FOR APPELLANT HIMEN ROSS
———————————————————————————

## INTRODUCTION

Himen Ross ("Ross") respectfully submits this brief in reply to the brief filed by the government ("GB"). To the extent not addressed herein, Ross relies on the facts and arguments in his principal brief ("PB"), as well as those raised by co-

appellant Anthony Zotolla ("Zotolla") in his reply briefing to the extent beneficial to Ross.[1]

## ARGUMENT

**THE GOVERNMENT'S BRIEF FAILS TO OVERCOME THE PREJUDICIAL ERRORS IDENTIFIED IN OUR PRINCIPAL BRIEF AND AS A RESULT, THE JUDGMENT OF THE DISTRICT COURT SHOULD NOT BE AFFIRMED**

In our principal brief, we explained that Ross's appeal centers on the interconnected ways in which he was unfairly prejudiced by the district court's rulings, particularly in three areas. These are:

(1) the increasing prejudice resulting from allowing the government to taint the record with wide-ranging and unjustifiable evidence of Ross's connection to a "gang"[2] controlled by Bushawn Shelton, a co-

---

[1] Any record references herein follow the format explained in footnote 1 of our principal brief, as do the treatment of quotations.

[2] The prejudice referred to in this context is the use of words such as "gang" or other equivalently-prejudicial terms that convey the essence of an organized criminal network (such as the Bloods) that utilizes violence and brutality as its dangerous *modus operandi*. As intended in this appeal, such labels are the identified prejudice. Although the record plainly admits of additional admitted evidence that likewise is prejudicial, it is the particular words complained of herein that we submit are the operative prejudice.

2

defendant who pleaded guilty prior to trial and who was the individual Zotolla engaged "for hire" to murder his father and brother,

(2) the similar prejudice visited up Ross at trial based on Zotolla's extensive use of highly prejudicial "gang" and related language in his opening statement, cross-examination of witnesses, and summation, and

(3) the reinforcing and aggravating prejudice of the court's decision to require an anonymous and partially-sequestered jury, thereby communicating that there was a valid reason for concern warranting extraordinary protection of the jurors, implicitly suggesting that they needed such protection because, as they would be told at the trial, Ross was a member of "Shelton's gang," a "trusted criminal organization," a "ruthless," "vicious," "badass" gang.

As we explained at the outset of our principal arguments, the sum effect of these prejudices was that Ross was deprived of the fair trial to which he was constitutionally entitled. (PB, p. 23)

Most of the government's brief in opposition relates to issues only relevant to Zotolla. To the extent pertinent to Ross's issues, that brief expends considerable effort addressing both factual and legal matters that are not in dispute, yet it also leaves wholly unanswered a number of the issues Ross raised. At times, we caution

3

that it is misleading, contradictory, illogical, and reductive, while at other times, it glibly rushes to conclusions based on assumptions it was required to, but did not, prove beyond a reasonably doubt (or otherwise). In the remainder of this reply brief, we discuss the most blatant instances of these defects that, in sum, fail to provide a basis for affirming the judgment of the district court. Principally, this will address the impropriety of the government's efforts to prejudice Ross. Briefly, we will also explain how Zottola's parallel acts of prejudice and it integrating and compounding effect. The third category of error, based on the prejudicial effect of an anonymous and partially sequestered jury, is the only one as to which both Ross and Zotolla are prejudiced. We will not separately address it here, relying instead on our principal brief and joining in the arguments on this point raised by co-appellant Zotolla in his principal and reply briefs.

### A. The Government's Prejudicial Employment of the Word "Gang" and Similar Language

At the original hearing addressing the government's application to permit reference to the notorious Bloods organization at trial, Judge Dearie did not allow such references (subject to revision if warranted later). While the government somehow concluded that Judge Dearie had sanctioned any wording other than mentioning the Bloods (GB, p. 84), that is incorrect. He said "[I]f somebody is

going to make an issue . . . of whether or not two people knew each other, then it may become somewhat relevant." But he went on to say that [i]f the Government's evidence is accurate, *Mr. Shelton reached out to certain people to perform certain roles*. As far as I'm concerned, *that says as much as needs to be said*." [JA 179 (emphasis added)]

As we note in our principal brief, Judge Gonzalez subsequently allowed a significantly broader license than Judge Dearie, leading to the extreme prejudice Ross suffered, and the present claim of error. We submit that Judge Dearie had it right, and that nothing in the record suggested the need to use highly prejudicial words (the litany of which we catalog in the principal brief) to make its points. Because Ross's prior relationship with Shelton was acknowledged on the record, and the government was free to present additional evidence as deemed relevant and material regarding that relationship, the express and vitriolic manner in which the prejudicial "gang" words were used served no proper purpose, were not material to any relevant proof required of the government, and were thus vastly outweighed by the enormous prejudice of those wholly unwarranted words, the required probity vs. prejudice balancing under Fed.R.Evid. 404(b) comes out forcefully on the side of prejudice. *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002); *see also United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008).

The above is underscored by the government's own brief which highlights in extensive detail the evidence of one of its cooperating witnesses, Ron Cabey. (GB, pp. 106-108) For all of the government's furious effort to validate the importance of presenting the "gang" language in relation to Ross, it neglects to mention that, by his own testimony, Ron Cabey was not a member of the Bloods, was not a member of Shelton's set, and was not a member of any gang at all. [T 2480] By means of what logic can the government insist that what is important for one alleged co-conspirator in the murder for hire conspiracy (Ross) is suddenly irrelevant and immaterial to another, very involved (by his own testimony) co-conspirator (the government's own witness, Cabey)? There is no logic; there is only undue prejudice to Ross.

Ron Cabey is not the only non-gang member charged in this conspiracy but he is perhaps the highest profile one. The other cooperating witness (Kalik McFarlane) *was* a member of the Bloods. Although not qualified as an expert, he was permitted to testify as to certain lingo supposedly used by the Bloods. *(See* GB, p. 90, FN 28) The lingo was used, he testified, so that "anybody that's not in the gang, civilians" "would be oblivious to what's going on when we speaking." [T 5854] This would be surprising news to Ron Cabey and the trial record in this case.

Despite the government's effort to characterize the use of words like "gang" – later not only spoken in other variations but with lots of adjectives like "vicious,"

6

"ruthless," and "terrifying" also appended – as serving a proper purpose, it is manifest that these words of prejudice are not probative because, as Judge Dearie explained, "Mr. Shelton reached out to certain people to perform certain roles. As far as I'm concerned, that says as much as needs to be said." The use of these words is not relevant, material, or probative. They served only one purpose, to highly prejudice Ross; that is not a proper purpose and it was an abuse of discretion that they were allowed by the court.

The government strains, especially at GB, pp.89-97, to justify the allowance of explicit gang-labeled testimony, but its effort falls of its own weight. If the government felt the need to "complete the picture," the starting point would have been to provide a reason that those important co-conspirators who were *not* in Shelton's set were somehow exempt from the putative explanation. For instance, at GB, pp. 91-92, the government offers:

> Without this evidence, the jury would have been left with the false impression that McFarlane simply acquiesced to a random, unusual, and violent request to commit murder, solely for money, and that Shelton simply got lucky with several accomplices in his ability to identify and recruit individuals willing to participate in a murder conspiracy.

Similarly, when the government suggests that, for example, "Shelton trusted McFarlane (and the other co-conspirators, including Ross) due to their pre-existing

7

[gang] relationship," one is forced to search for an explanation for the "relationship of mutual trust," *United States v. Pipola,* 83 F.3d 556, 565-566 (2d Cir. 1996), between Shelton and non-gang co-conspirators (exemplified by Ron Cabey). The contradictory nature of the government's supposed explanations repeatedly undermine its position.

Another example of the government confounding its own arguments arises when it addresses the "motive" for the crime. It attempts to distinguish *United States v. Nieves,* 58 F.4th 623, 637 (2d Cir. 2023) [a case cited by and helpful to Ross], on the basis, *inter alia,* that in that case "the defendant's gang association was a material issue at trial [and] provided the government's theory of motive" but that in this case, "the government was not alleging that gang membership provided the motive for the crime." (GB, p. 97) Yet previously, when it sought to bring the "gang" references into the record of this case by means of Rule 404(b) (and now in its brief, at GB, p. 89), the government noted that when Shelton first asked McFarlane to join the murder for hire conspiracy, he told him (per McFarlane) that committing these crimes would be for the "betterment" of the gang. [T 5808]

The government cannot have it both ways. Either there was a pre-existing "relationship of mutual trust" based on gang membership, or there was not; either there was a gang-related motive for the crimes, or there was not; either the gang

8

labels so liberally spread across the record in this case are relevant and material (and thus due consideration under Rule 404(b) and the *Downing* case), or they are not. As Judge Dearie's considered opinion pre-trial made clear, this is not a case about gangs. The allowance of the discussion about gangs, much less the employment of the most harmful words imaginable to describe them, was an abuse of discretion. They were not relevant and not material, and thus were wholly lacking in probative value. They were enormously prejudicial and thus justify setting aside the verdict that was prejudiced thereby.

### B.   Zotolla's Trial Defense Exacerbated the Prejudice

Although the government apparently recognizes (GB, p. 99, FN 33) that we have not raised as separate issues either antagonistic defenses or severance issues, it nonetheless expends considerable words and pages in its brief on those subjects. We reconfirm that we are simply asking the Court to consider the identified prejudicial language in Zottola's trial activity on all levels (statements to the jury and cross-examination of witnesses, in particular) in the balancing context of Fed.R.Evid. 403 and 404(b).

We will not repeat what we itemized as the prejudicial (as to Ross) use of gang language by Zotolla's counsel that is set out at PB, pp. 14-23. We would however make the additional point that the prejudice flowing from the Zotolla

9

activity compounds the prejudice caused by the government's actions discussed in the preceding sub-point. Rule 403 calls on the court to undertake a balancing assessment. This (contrary to what the government suggests (GB, p. 98, FN 32)), the court did not do.

What the court did was balance the probative against the prejudicial on a playing field on which relevance and materiality and purpose were assumed. But as we demonstrate *supra,* pages 7-9, the government did not prove materiality and the immaterial cannot be relevant. Likewise, the government certainly did not prove motive for Rule 404 purposes (and it is not even clear it sought to), and the record stands devoid of any basis for concluding that a valid purpose was shown under Rule 403.

There is nothing in the government's argument regarding the Zotolla-caused prejudice that alters the way one might view the prejudice caused by the government. If anything, it made it considerably worse. The compounded prejudice deprived Ross of the fair trial to which he is constitutionally entitled.

## CONCLUSION

For all of the reasons set forth above and in our principal brief, as well as in those portions of the Zotolla briefs that we join, Ross's conviction and sentence should be vacated.

Respectfully submitted,

Lawrence Gerzog
The Fast Law Firm
521 Fifth Avenue, 17th Floor
New York, New York 10175
(212) 486-3003
*Attorney for Appellant*
*Himen Ross*

April 11, 2025

## CERTIFICATE OF COMPLIANCE

I certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Word Perfect 2021 in Times New Roman, 14-point font. The brief is within the page limitation of Local Rule 32.1(a)(4)(A), and thus is compliant therewith.

      /s/
Lawrence Gerzog
The Fast Law Firm
521 Fifth Avenue, 17th Floor
New York, New York 10175
(212) 486-3003
*Attorney for Appellant*
*Himen Ross*

Dated:    New York, New York
             April 11, 2025